UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.                                                                              Case No. 11-20455

JOHN MCDONALD LAWRENCE,                      HONORABLE AVERN COHN

    Defendant-Petitioner.

_____/

### ORDER DENYING MOTION TO VACATE UNDER 28 U.S.C. § 2255 (Doc. 96) AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

#### I. Introduction

This is a _pro se_ motion to vacate sentence under 28 U.S.C. § 2255. Petitioner, John McDonald Lawrence (Lawrence), contends that the 240 month sentence imposed on him following his guilty plea to conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine was in violation of his constitutional rights. Before the Court is Lawrence's § 2255 in which he contends that he was deprived of his Sixth Amendment right to counsel because his counsel was ineffective. (Doc. 96). The government, at the Court's request, filed a response to the motion. (Doc. 105). Lawrence filed a traverse (reply) to the government's response. (Doc. 106). The matter is now ready for decision.[1] For the reasons that follow, the motion will be denied.

---

[1] Lawrence also requested an evidentiary hearing. However, the motion papers, together with the files and record, "conclusively show that Defendant is entitled to no relief." 28 U.S.C. § 2255; see also Rule 4(b), 28 U.S.C. § 2255 Rules. Therefore, the motion may be resolved without an evidentiary hearing. United States v. Johnson, 327

## II. Background

The following facts are gleaned from record, including the Presentence Investigation Report (PSR). An investigation of a drug trafficking organization led to the discovery of Lawrence, who wanted to buy large quantities of cocaine. On May 24, 2011,[2] an undercover agent and a confidential informant met with Lawrence in Los Angeles, California, where Lawrence stated he could sell 50 to 100 kilograms of cocaine per week in Detroit, Michigan. Lawrence also stated he had $150,000 to invest in purchasing the cocaine, and a price of $21,500.00 per kilogram was negotiated. On or about May 25, 2011, Petitioner left California and reported to a halfway house in Detroit to serve the remainder of his federal prison term. Between May 25, 2011, and June 20, 2011, several telephone conversations between Lawrence, the undercover agents, and two of the co-defendants occurred in order to coordinate the sale and delivery of 50 to 100 kilograms of cocaine. On June 14, 2011, Lawrence told the informant that he (Lawrence) was ready to buy 50 to 75 kilograms of cocaine.

Lawrence met with the confidential informant in Detroit and led the informant to his (Lawrence's) residence on June 21, 2011. Lawrence stated he had $150,000.00 and wished to wait to complete the sale until he gathered more buy money. While the informant was at Lawrence's residence, Lawrence's brother and co-defendant Daryl Steele (Steele) arrived and stated he wanted to buy 25 to 35 kilograms of cocaine.

---

U.S. 106, 111. (1946); <u>Baker v. United States</u>, 781 F. 2d 85, 92 (6th Cir. 1986).

[2]Lawrence was released from a federal prison in California on May 22, 2011 after serving time on a drug offence. He was directed to report to a halfway house in Detroit to serve the remainder of his sentence. As noted, Lawrence resumed his criminal drug trafficking activity within days of his release.

Lawrence and Steele agreed to pay $25,000.00 of the $150,000.00 as a deposit. Lawrence met with the informant again on June 22 and June 23, 2011. During the June 23 meeting, Lawrence received a phone call, ended the meeting abruptly, and could not be reached by telephone the following day. Based on this information, arrest warrants for Lawrence and Steele were issued.

Lawrence was charged with conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii)(II).

On October 13, 2011, the government filed a Notice of Penalty Enhancement under 21 U.S.C. § 851(a), explaining that Lawrence's prior drug conviction subjected him to an increased punishment under 21 U.S.C. § 841(b)(1)(A), which provides for a statutory mandatory minimum sentence of 240 months.

On October 17, 2011, Lawrence pled guilty to the indictment without the benefit of a Rule 11 agreement. Lawrence was held accountable for conspiring to purchase $150,000.00 worth of cocaine at $21,500.00 per kilogram, which equated to 6.98 kilograms. The PSR calculated Lawrence's guidelines range as 168-210 months based on an offense level of 33 and a criminal history category III. However, the PSR noted that Lawrence was subject to the statutory mandatory minimum of 240 months, which became the guideline range. Lawrence did not object to the PSR. Lawrence, through counsel, filed a sentencing memorandum. In the memorandum, Lawrence's counsel did not dispute the quantity of cocaine or the calculation of his sentence. Instead, Lawrence's counsel urged a sentence that would direct placement consistent with his medical needs and permit substance abuse treatment and vocational training.

On March 27, 2012, the Court sentenced Lawrence to the statutory minimum of 240 months. The Court also followed Lawrence's counsel's request and recommended that Lawrence be designated to a medical facility in California. Lawrence did not appeal. Subsequently, he filed the instant motion under § 2255.

### III. The Law

Title 28 U.S.C. § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States. . .or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

To prevail under § 2255, petitioner must show a "fundamental defect which inherently results in a complete miscarriage of justice." United States v. Timmreck, 441 U.S. 780, 783 (1979) (quoting Hill v. United States, 386 U.S. 424, 428 (1962)).

In order to succeed on a claim of ineffective assistance of counsel, a petitioner must show (1) that his counsel's performance was constitutionally deficient in that the performance "fell below an objective standard of reasonableness under prevailing professional norms" and (2) that he was prejudiced by his counsel's errors. Magana v. Hofbauer, 263 F.3d 542, 547 (6th Cir. 2001) (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). In order to establish prejudice, a petitioner must demonstrate that "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "The Strickland analysis also applies to claims of ineffective assistance of counsel involving

4

counsel's advice offered during the plea process." Magana, 263 F.3d at 547 (quoting Hill v. Lockhart, 474 U.S. 52, 58 (1985)).

### IV. Analysis

Lawrence argues his counsel was ineffective for failing to challenge the quantity of cocaine described in the PSR. Lawrence contends the amount was based on inaccurate information and that he should only be responsible for $25,000.00 worth of the drug (approximately one kilogram).

This allegation lacks merit. The PSR sets forth in detail the information Lawrence told to the confidential informant, i.e. that he could sell 50 to 100 kilograms of cocaine per week in Detroit. Lawrence also stated he was ready to buy 50 to 100 kilograms and that he had $150,000.00 of his own money he planned to use to purchase the cocaine. These statements about drug quantity and payment amount, along with the several telephone conversations between Lawrence and undercover agents between May 25, 2011, and June 20, 2011, support the finding that Lawrence was conspiring to possess more than five kilograms of cocaine that he intended to distribute in the Detroit area. Furthermore, while $25,000.00 of Lawrence's $150,000.00 was the only amount of money Lawrence gave the informant, Lawrence agreed this amount was a good faith down payment. Lawrence was not given any cocaine in exchange for the $25,000.00; it was merely a deposit given until Lawrence was able to collect more buy money and complete the drug deal. After Lawrence gave the deposit, he continued to meet with the informant. If Lawrence planned to purchase only $25,000.00 worth of cocaine, he would not have agreed the money was a deposit, he would have expected to receive $25,000.000 worth of cocaine at the time he handed

over the money, and he would not have continued to meet the informant to further discuss the deal.

Because the amount of cocaine described in the PSR is not inaccurate, Lawrence has failed to show that his counsel was ineffective for failing to object to the PSR. Indeed, the PSR details that more cocaine was involved than just the five kilograms or more for which he was accountable at sentencing. Thus, Lawrence is not entitled to relief based on this allegation of ineffectiveness.

Lawrence also says that his counsel was ineffective because he did not understand the statute he pled guilty to, and that his counsel "never explained the prerequisites and elements of the charged offense." These allegations are belied by the record.

At Lawrence's plea hearing, the Court asked Lawrence about his guilty plea to conspiracy to possess with intent to distribute five kilograms or more of cocaine:

| | |
|---|---|
| The Court: | Have you read this indictment? |
| The defendant: | Yes, I have. |
| The Court: | Have you discussed with your lawyer the charge against you? |
| The defendant: | Yes I have. |
| The Court: | Which is conspiracy to possess with intent to distribute and to distribute cocaine? |
| The defendant: | Yes, Your Honor. |
| The Court: | Do you know what the maximum sentence for that offense is? |
| The defendant: | Yes, Your Honor. |

| | |
|---|---|
| The Court: | What? |
| The defendant: | 20 years on the count that I'm facing. |
| The Court: | 20 years? No. |
| Counsel: | 20 to life. |
| The defendant: | 20 to life, rather. |
| The Court: | Minimum of 20? |
| The government: | Yes, Your Honor, with the 851 enhancement. |

(Plea Hearing Transcript, October 17, 2011, Page 6 Lines 20-25, Page 7 Lines 1-16).

Lawrence also admitted to engaging in a conspiracy to possess with intent to distribute and to distribute cocaine, as follows:

| | |
|---|---|
| The Court: | Did you, as charged in this indictment, engage in a conspiracy to distribute, possess with intent to distribute and distribute cocaine? |
| The defendant: | Yes, I did. |
| The Court: | You plead guilty, right? |
| The defendant: | Yes, I do. |
| The Court: | What did you do? |
| The defendant: | I conspired with another individual to possess and distribute cocaine. |

(Id. at Page 8 Lines 10-18).  After asking the petitioner a series of questions designed to elicit the factual basis for his guilty plea, the Court invited counsel for the Government to describe the nature of the offense charged:

| | |
|---|---|
| The Court: | [. . .] would you like to describe the nature of what he did wrong? |
| The government: | Absolutely. |

| | |
|---|---|
| The Court: | [addressing the defendant] And you listen to her. |
| The government: | In May 2011, approximately the same date Mr. Lawrence was released from a federal correctional institute in California, he met with an undercover agent and with [Co-Defendant] Mr. Preciado or actually a confidential source to arrange for the delivery of 50 to 100 kilograms of cocaine in the Detroit area. |
| The Court: | Where did the meeting take place? |
| The government: | In I believe it's the Radisson Hotel at the Los Angeles International Airport. |
| The Court: | Yeah. |
| The government: | That he additionally met the following day at a Burger King in Los Angeles to arrange for the delivery of cocaine to the Detroit area. Then on or about June 21st 2001 [2011] in a residence on Stah[elin] Street in Detroit Mr. Lawrence and another codefendant, Daryl Steele, met with a confidential source for the purpose of arranging the delivery of 25 to 35 kilos of cocaine and that Mr. Lawrence and Mr. Steele gave the confidential informant $25,000 in cash as a good faith deposit on the delivery of cocaine. |
| The Court: | Where did you get the $25,000? |
| The defendant: | It came – I'm not exactly sure where the funds came from. |
| The Court: | This all took place within a week? |
| The government: | Approximately May 23rd, the date that Mr. Lawrence was released from custody, to approximately June 22nd or 23rd, within a month. |
| The Court: | Is what she described accurate? |
| The defendant: | Yes, it is, Your Honor. |

(Id. at Page 10 Lines 11-25, Page 11 Lines 1-17)

From a review of the record, Lawrence entered a guilty plea which demonstrated

8

he was familiar with the indictment and the sentence he faced, and that he had fully discussed it with his counsel.  Lawrence therefore cannot prevail on a §2255 motion based on the argument that his counsel was ineffective for failing to explain the charge to him.

Moreover, Lawrence argues that he should have been subject to a 10 year, not 20 year, minimum sentence based on the evidence.  He says that counsel was ineffective for advocating for the 10 years.  Lawrence is mistaken.  Lawrence accepted responsibility for a cocaine quantity of between 25 and 100 kilograms, which is significantly more than the 5 kilograms or more necessary to trigger the 20 year sentencing enhancement.  While Lawrence suggests that a currency conversion method of drug quantity would have resulted in him being accountable for only 1 kilogram of cocaine, instead of 5 kilograms or more, Lawrence admitted to a much higher quantity than the currency involved.  Indeed, the currency was intended as a deposit towards the purchase of more cocaine.  The government's response also explains how even if less than 5 kilograms was involved, Lawrence would likely face well more than a 10 year minimum sentence.  (Doc. 105 at p. 13-14).

Finally, Lawrence says that the government never served notice on him or his counsel of the § 21 U.S.C. 851(a) sentencing enhancement and because of this, "851 has no merit and it's inapplicable."  This argument does not carry the day.  The government filed a certificate of service of the notice of enhancement, stating that notice of filing was sent to Lawrence's attorney by the Court's electronic ECF system.

## V.  Conclusion

Lawrence was represented by competent counsel.[3]  The 240 month sentence imposed on was lawfully imposed based on the evidence of record and consistent with Lawrence's level of culpability.  Lawrence has not demonstrated that he is entitled to relief under § 2255.  Accordingly, the motion is DENIED.

Furthermore, reasonable jurists would not debate the Court's assessment of Lawrence's claims, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore DECLINES to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2).[4]  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

SO ORDERED.

    S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  July 12, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 12, 2013, by electronic and/or ordinary mail.

    S/Sakne Chami
Case Manager, (313) 234-5160

---

[3] As explained in the government's response, Lawrence received the benefit of only one § 851 enhancement instead of a double enhancement for which he was eligible based on this two prior felony drug convictions.  A double enhancement would have carried a mandatory life sentence.  The government credits Lawrence's counsel's advocacy on his behalf as part of the reason for the decision to file a single enhancement.

[4] The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  See Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. ' 2254.