UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                Case Number 11-20455
v.                                                   Honorable David M. Lawson

JOHN McDONALD LAWRENCE,

        Defendant.
_____/

## ORDER DENYING MOTIONS FOR COMPASSIONATE RELEASE

Defendant John Lawrence has filed a motion, later supplemented by counsel, asking the Court to reduce his sentence to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239.  Lawrence has served approximately half of a 20-year prison sentence for a drug conspiracy to which he pleaded guilty.  He argues that a sentence reduction is justified by his medical conditions (stage III chronic kidney disease, asthma, hypertension, arteriosclerotic vascular disease, prediabetes, and sleep apnea) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. He also points out that the non-retroactive provisions of the First Step Act of 2018 reduced the mandatory minimum sentence that would apply to his crime if he were to be sentenced today.  The government concedes that Lawrence's medical conditions amount to extraordinary and compelling reasons for release, but it maintains that he would be a threat to public safety if were set free. Although Lawrence's medical ailments coupled with the threat of a COVID-19 infection may amount to "extraordinary and compelling reasons [to] warrant such a reduction," as section 3582(c)(1)(A)(i) requires, consideration of the factors in 18 U.S.C. § 3553(a) do not favor early

release. Because Lawrence has not demonstrated that immediate release is appropriate or that he qualifies for release under any other provision of section 3582(c)(1), the motion will be denied.

I.

On October 17, 2011, defendant John McDonald Lawrence pleaded guilty without a written plea agreement to conspiring to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(A)(ii)(II). On March 28, 2012 the Honorable Avern Cohn sentenced the defendant to a mandatory minimum sentence of 240 months in prison to be followed by 10 years of supervised release. Lawrence presently is confined at Lompoc USP, in California, which is a medium-security facility that houses around 1,200 inmates. Public records of the BOP indicate that the defendant is scheduled to be released from prison on July 8, 2028. Lawrence is 56 years old.

On July 27, 2020, Lawrence's aunt submitted a letter on his behalf, which the prison construed as a request for compassionate release. The letter requested Lawrence's release due to his health issues, including COPD (not raised in his motion for compassionate release), high blood pressure, asthma, and respiratory problems. *Ibid.* The Warden denied the request on August 11, 2020. On November 23, 2020, Lawrence filed a *pro se* motion seeking home confinement and the assistance of counsel. The Court construed the filing as a motion for compassionate release, appointed counsel, and the defendant filed a supplemental brief with the assistance of counsel on January 8, 2021.

The most recent data disclosed by the BOP indicates that there are two active coronavirus cases among inmates and four among staff. In addition, 205 inmates and 45 staff members previously were diagnosed and now have recovered. Reports indicate that two inmates have died from the virus. *See* https://www.bop.gov/coronavirus/. And although the BOP began vaccinating

inmates and staff at Lompoc FCI (242 inmates and 166 staff members), the BOP has yet to vaccine individuals affiliated with Lompoc USP.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Lawrence relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.*

Despite its earlier resistance in other cases in this district to the clear decision in *Jones*, the government has come begrudgingly to accept its holding and acknowledges that the case, together with its explication in *Elias*, is "controlling circuit precedent."

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Addressing the first element — extraordinary and compelling reasons — Lawrence argues that pre-existing medical conditions consisting of his stage III chronic kidney disease, asthma, hypertension, arteriosclerotic vascular disease, prediabetes, and sleep apnea render him vulnerable to complications from the highly-contagious novel coronavirus. In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put him at risk of contracting the virus)." *Jones*, 980 F.3d at 1102 n.6.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson*

*v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.* (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassiter*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, Ctrs. for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16. It is appropriate to consult the CDC guidelines and other "scientific journal[s]" when determining whether extraordinary and compelling reasons exist. *Elias*, 984 F.3d at 521.

Here, Lawrence's sleep apnea and prediabetes do not provide extraordinary and compelling reasons for his release. The CDC does not recognize sleep apnea as a condition that may increase one's chances of a severe COVID-19 infection. *People with Certain Medical Conditions,* Ctrs. for Disease Control & Prevention (Feb. 22, 2021), https://bit.ly/2WBcB16. And "'prediabetes'

does not denote a diagnosed diabetic condition. Instead, it indicates merely the presence of higher than normal blood sugar which may make it more likely that a person will develop Type 2 diabetes." *United States v. Simmons*, No. 18-20270, 2020 WL 4816199, at * 2 (E.D. Mich. Aug. 19, 2020) (citing WebMD: Types of Diabetes, https://www.webmd.com/diabetes/guide/types-of-diabetes-mellitus)).

However, it is likely that Lawrence's hypertension increases his susceptibility to complications from COVID-19. The CDC states that individuals with hypertension "might be at an increased risk for severe illness from COVID-19." *People with Certain Medical Conditions*, *supra*. But "that condition is grouped with 'serious heart conditions' that predispose a person to higher risks of complications. Also included are 'heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension.'" *United States v. Watkins*, 2020 WL 5035111, at *4 (E.D. Mich. Aug. 11, 2020) (quoting *People with Certain Medical Conditions*, *supra*). Not only does the record support Lawrence's allegation that he is hypertensive, but his medical records reflect that his hypertension is compounded by arteriosclerotic vascular disease, Medical Records, ECF No. 138-4. PageID.594, a heart disease defined by a "buildup of facts, cholesterol and other substances" (plaque) in an individual's arteries, which can restrict blood flow. *Arteriosclerosis/Atherosclerosis*, Mayo Clinic, https://mayocl.in/2MV8sCE (last visited March 8, 2021).

The same is true for the defendant's asthma. The CDC recognizes moderate to severe asthma as a condition that "might" increase one's risk of a severe COVID-19 infection. *People with Certain Medical Conditions, supra*. The defendant's medical records reflect that the defendant has suffered from chronic "moderate persistent asthma" for years, and the BOP prescribed him an inhaler to take up to four times per day "as needed to prevent/relieve asthma

attack[s]." Medical Records, ECF No. 138-4, PageID.595, 649.  His medical records also reflect that he was hospitalized in April 2018 for respiratory issues and has had several bouts of bronchitis. *Id.* at PageID.602, 648.

Moreover, "the government agrees" that Lawrence's stage 3 chronic kidney disease constitutes an extraordinary and compelling reason for his release.  Response, ECF No. 139, PageID.688; Medical Records, ECF No. 138-4, PageID.614; *see People with Certain Medical Conditions, supra* ("Having chronic kidney disease of any stage increases your risk of severe illness from COVID-19").

Lawrence also argues that Congress's non-retroactive reduction of the mandatory minimum sentence that applies to his crime, *see* First Step Act of 2018, § 401(a)(2)(A)(i), Pub L. 115-391, 132 Stat. 5194, 5239, provides another extraordinary and compelling reason for his release.  However, the Court need not address that argument since Lawrence's medical conditions coupled with the COVID-19 pandemic satisfy this element of his claim.

C.

Despite the defendant's satisfactory showing of extraordinary medical risk, early release is not justified in this case because the relevant section 3553(a) factors weigh heavily against discharging him into the community.

The government has abandoned its argument that compliance with the Sentencing Commission's policy statement on compassionate release is mandatory, which was based on one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness.  That argument, it acknowledges, is a dead letter after the Sixth Circuit's decision in *Jones*, 980 F.3d at 1109 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies

compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion."); *Elias*, 984 F.3d at 519-20 (same).

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Lawrence's crime is serious. He conspired to distribute a large quantity of cocaine, an addictive and potentially fatal controlled substance. Moreover, his criminal history is troubling. In his early 20s, he notched several convictions, from petty theft to cocaine possession, but received probationary sentences each time. When he was 25, he was sentenced to one-to-ten years in prison for forcefully robbing a woman. Five years later, he received a two-year probationary sentence for delivering crack cocaine to another person. Undeterred, he traveled to New Mexico while serving that sentence and was arrested with six kilograms of cocaine, which resulted in a 10-year prison sentence. After his release in 2007, he violated the conditions of his supervised release twice by falsifying his employment and changing his address, resulting in a six-month term at a residential reentry center. When he was released, he violated his supervised release conditions again by traveling to Mexico without permission, subjecting him to a 12-month custodial term in a reentry facility in California.

While at the halfway house, Lawrence, then 47 years old, committed a new federal drug crime — the crime for which he is presently incarcerated. He offered to a group of undercover California law enforcement officers posing as drug suppliers that he would distribute 50 to 100 kilograms of cocaine per week, invited the group to see "how his operation runs," and advised that he had $150,000 of his own money to invest. Although Lawrence agreed to buy 50 kilograms of cocaine, the government only held him accountable for seven kilograms, which translated to $150,000's worth.

The probation department calculated the sentencing guidelines to be 168 to 210 months. But because the government filed a penalty enhancement information under 21 U.S.C. § 851, Judge Cohn was compelled to sentence the defendant to a mandatory minimum 240-month term. Nonetheless, despite the mandatory sentence, a substantial prison term was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a). And one of those goals — protection of the public — is paramount in this case. Lawrence was a committed dealer of dangerous drugs who steadfastly refused to change his behavior in spite of substantial prior prison sentences and the assistance of supervisory officers who were dedicated to his rehabilitation. That intransigence left no alternative than isolation to protect the public.

Since his incarceration in 2011, Lawrence received three disciplinary infractions. In 2016, Lawrence was disciplined for being insolent to prison staff and in March 2020, he was disciplined for possessing unauthorized items and exchanging money without authorization. Over two separate terms of incarceration, the defendant has completed about 53 courses since 2010. However, although Lawrence's willingness to educate himself is commendable, he cannot escape his history, which reveals consistent involvement in serious drug trafficking and an inability to follow the terms of supervision, even as he matured.

It cannot be said convincingly that Judge Cohn's sentence was greater than necessary to achieve congressional goals. Based on Lawrence's current release date of July 8, 2028, he has served slightly over half of his sentence. Releasing Lawrence after now would not promote respect for the law or provide a just punishment for the defendant's crime. Nor would it serve as a significant deterrent to others; to the contrary, it severely would undermine the goals of both specific and general deterrence, which is of particular concern with a defendant who has demonstrated his enterprising resourcefulness in flouting the law.

Consideration of the factors in 18 U.S.C. § 3553(a) weighs heavily in this case against granting any reduction in sentence, and those factors foreclose relief, even in light of the outbreak of COVID-19 at Lompoc USP. The defendant's medical conditions likely increase his risk of complications if he were to contract COVID-19. But his conduct both leading to his indictment and afterward in prison cast significant doubt on his inclination to be law abiding and conform to the norms of society. On similar facts, federal courts readily have denied compassionate release motions by defendants who were convicted of serious drug crimes, notwithstanding an inmate's demonstration of elevated medical risk. *E.g.*, *United States v. Benge*, No. 12-59, 2020 WL 5845892, at *4 (E.D. Ky. Oct. 1, 2020) ("Given the gravity of Benge's drug offense and that he has only served a fraction of his 240-month sentence, release is not appropriate. Further, Benge's drug trafficking offense suggests that he poses a continued danger to the safety of the community.").

III.

Lawrence has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

- 12 -

Accordingly, it is **ORDERED** that the defendant's motions for compassionate release (ECF No. 130, 137, 144) are **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:  March 8, 2021